Mr. Justice Johnson
 

 délivered the opinion of the Court.
 

 This case presents no ordinary group of legal questions. They exhibit a striking specimen of the involutions which ingenuity may cast. about legal rights, and. an instance of the growing pretensions of some of the State Courts over the exercise of the powers of the general government.
 

 The plaintiff in error, who was also the plaintiff
 
 *599
 
 below, supposes hipiseif entitled to a pre-emptive interest in a. tract of land in the State of Ohio, and claims of the register of the land office of the United States, the legal acts and documents upon which such rights are initiated. That officer refuses, under the idea, that the right is already legally vested in another; and that he possesses, himself, no power over the subject in controversy. A mandamus is then moved for in. the Circuit Court of the United States, and that Co'urt decides, that Congress has vested it with no such controlling power over the acts of the ministerial officers m the given case. The same application is then preferred to the State Court for the county in which the subject in controversy is situated. The State Court sustains its own jurisdiction over the register of the land office, but on a view of the merits of the claim, dismisses the motion.
 

 From both these decisions appeals are made, to this Court, in form of a writ of error.
 

 In the case of
 
 M'Intire
 
 v.
 
 Wood,
 

 a
 

 decided in this Court, in 1813, the mandamus contended for was intended to perfect the same claim, and in point of fact the suit was between the same parties: The influence of that decision on these cases, is resisted, on the ground, that it did not appear in that case, that the controversy was between parties who, under the'
 
 description of person,
 
 were entitled to maintain suits in the Courts of the United States; whereas, the averments in the present cases show, that the parties litigant are citizens of different States, and,
 
 *600
 
 therefore, competent, parties in the Circuit Court. But we think it perfectly clear, from an examination of the decision alluded to, that it was wholly uninfluenced by any considerations drawn from the want of personal attributes of the parties. The case came up on a division of opinion, and the single question stated is, “ whether that Court had power to issue a writ of mandamus to the register of a land office in Ohio, commanding him to issue a final certificate of purchase to the plaintiff for certain lands in the State ?”
 

 Both the argument of counsel, and the opinion of the Court, distinctly show, that the power to issue the mandamus in that case, was contended for'as incident to the judicial povvers of the
 
 United States.
 
 And the reply of the Court is, that though,
 
 arsu-menti
 
 gratia, it be admitted, that this controlling power over its ministerial officers, would, follow from vesting in its Courts the whole judicial power of the United States, the argument, fails here, since the legislature has only made a partial delegation of its judicial powers to the Circuit Courts ; that if the inference be admitted as far as the judicial power of the Court actually extends, still, cases arising under the laws of the United States, are
 
 not, per se,
 
 among the cases comprised within the jurisdiction of the
 
 Circuit
 
 Court, under the provisions of the 11th section ; jurisdiction being in such cases reserved to the
 
 Supreme Court,
 
 under the 26th section, by way of appeal from the decisions of the State Courts.
 

 There is, then, no just inference to be drawn from the decision in the case, of
 
 M'Intire
 
 v.
 
 Wood,
 
 in fa-
 
 *601
 
 vour of a case in which the Circuit Courts of the United States are vested with jurisdiction under the 11th section. The idea is in opposition to tiie express words of the Court, in response to the question stated, which are, “ that the Circuit Court did not possess the power to issue *he mandamus moved for.”
 

 It is now contended, that as the parties to this controversy are competent to sue under the 11th section, being citizens of different States, that this is a case within the provisions of the 14th section, and the Circuit Court was vested with power to issue this writ, under
 
 the
 
 description of a “ writ not specially provided for by statute,” but “ necessary for the exercise of its jurisdiction.” The case certainly does present one of those instances
 
 of
 
 equivo-fcál language, in which the proposition, though true in the abstract, is in its application to the subject glaringly incorrect. It cannot be denied, that the exercise of this power is necessary to the exercise of jurisdiction in the Court below; but why is it necessary ? Not because that Court possesses jurisdiction, but because it does not possess it. It must exercise this power, and compel the emanation of the legal document* or the execution of. the legal act by the register of the land office, of the party cannot sue.
 

 The 14th section of the act under consideration, could only have been intended to vest the power now contended for, in cases where the jurisdiction already exists, and not where it is to be courted or
 
 *602
 
 acquired, by means of-the writ proposed to be sued otit. Such was the case brought up from Louisiana, in which the judge refused tó proceed to judgment, by which act, the plaintiff must have lost his remedy below, and this Court have beén deprived of its ap-r pellate control, oyer the question of right.
 

 The remaining questions bear a striking analogy to that already disposed of.
 

 The State Court having decided in favour of its own jurisdiction over the register, the appellant, so far, had nothing to complain of. It is only where a State Court decides
 
 against
 
 the claim set up under the laws of the United States, that appellate jurisdiction is given from the State, decisions. But in the next step of his progress, he was not equally fortunate. The State Court rejected his application on the merits of his claim, and appear to have decided that an entire section might be divided-into fractions, by the river Muskingum, in a legal sense. Of this he now complains, and contends that the decision is contrary to the laws of the United States.
 

 From this state of facts, the following embarrassment arises. The United States officer, the. defendant, can have no inducement to contest a jurisdiction that has given judgment in his favour:, and the plaintiff in error must sustain its jurisdiction, or relinquish all claim to the relief sought for through its agency. And thus this' Court, with its eyes open to the defect in the jurisdiction of the Court below, is calle.d upon to take cognizance of the merits of the question, both parties being thus equally interested, in sustaining the jurisdiction asserted by that Court.
 

 
 *603
 
 Let the course which this Court ought to pursue, be tested by consequences. The alternative is to give judgment for or against the plaintiff. If it be given for him, this Court must invoke that Court to issue the writ demanded, or pursuing the alternative given by the 26th section, it must itself proceed to execute the judgment which that Court ought to have given. Or, in other words, to issue the writ of mandamus, in a case to which it is obvious that neither the jurisdiction of that Court, nor this, extends.
 

 No argument can resist such an obvious
 
 deductio in
 
 absurdum.
 

 It is not the first time that this Court'has encountered similar difficulties, in its advance to questions-brought up from other tribunals. It has. avoided them by deciding that it is not. bound to encounter phantoms. The party who proposes to avail him-, self of á defective jurisdiction, has nothing to complain of, if he is left to take the consequences. His antagonist might have had cause to complain — he can have none. And, notwithstanding express evidence of the contrary, this Court feels itself sanctioned, in referring the decision of the State Court, in this case, to the ground on which it ought to have been, made, instead of that on which it appears to have been made. The question before an appellate Court Is, was
 
 the judgment
 
 correct, not the
 
 ground
 
 on which the judgment professes to proceed.
 

 Whether a State Court generally possesses á power to issue writs of mandamus, or what modifications of its powers may be imposed on it, by the laws which constitute it, it is correctly argued, that this Court
 
 *604
 
 cannot be called upon to decide. But when the exercise of that power is extended to officers commissioned by the United States, it is immaterial under what law that authority be asserted, the controlling power of this Court may be asserted on the subject, tinder-the description of an exemption claimed by the officer over whom it is exercised.
 

 It is not easy to conceive on what legal ground a State tribunal can, in any instance, exercise, the power, of issuing a mandamus to the register of a land office. The United States have not thought proper to delegate that power to their own Courts. But when in the cases of
 
 Marbury
 
 v. Madison, and that of
 
 M‘Intire
 
 v. Wood, this Court decided against the exercise of" that, power, the idea never presented itself, to any one, that it was not Within the scope of the judicial powers of the United States, although not vested by law, in the Courts of the general Government. And no one will seriously contend, it is presumed, that it is among the. reserved powers of the States, because not communicated by law to the Courts of the United States ?
 

 There is but one shadow of a ground on which such a power can be contended for, which is, the general rights of legislation which the States possess over the soil within their respective territories? It is not now necessary, to consider that power, as to the soil reserved to the Uuited States, in the States respectively. The question in this case is, as to the power of the State Courts, over the officers of the general Government, employed in disposing of that land, under, the laws passed for that purpose. And here it is obvious, that
 
 *605
 
 he is. to be regarded either as an officer of that Government, or as its private agent. In the one capacity or the other, his conduct can only be controlled by. the power that created him; since, whatever doubts have from time to time been suggested, as to the supremacy of the United States, in its legislative, judicial, or executive powers, no one-has ever contested its supreme right to dispose of its own property in its own way. And when we find it withholding from its own Courts, the exercise of this controlling power over its ministerial officers, employed in the appropriation of its lands, the inference clearly is, that all violations of private light, resulting from the acts of such-officers, should be the subject of actions for damages, or to recover the specific property, (according to circumstances) in Courts of competent jurisdiction. That is, that parties should be referred to the ordinary mode of obtaining justice, insleád.of resorting to the extraordinary and unprecedented mode of trying such questions orí a motion for a mandamus.
 

 Judgment. This cause came on to be heard, on the transcript of the record of the Supreme Court of the State of Ohio, for Muskingum county, and was argued by counsel. On consideration whereof, it is adjudged and ordered, that.the judgment of the said Supreme Court of the State of Ohio, be, and the same is hereby affirmed, with costs; it being the opinion of this Court, that the said Supreme Court of the State of Ohio, had no authority to issue a mandamus in this case.
 

 a
 

 7
 
 Cranch,
 
 504.