BYE, Circuit Judge,
dissenting.
I respectfully dissent.
The government attempts to present an interlocutory appeal, stemming from the district court’s grant of habeas corpus relief. The district court found Angela Johnson received ineffective assistance of counsel only in the final, penalty-selection phase of her capital trial; therefore, the district court only granted a rehearing of that phase. Johnson v. United States, 860 F.Supp.2d 663, 873 (N.D.Iowa 2012). Pursuant to this relief, the district court ordered evidence excluded as it pertained to the death-eligibility phase, because the district court would not retry Johnson’s eligibility for the death penalty. The government appeals that order.
Interlocutory appeals are not generally heard from grants of habeas corpus relief because there is no final decision until a new sentence has been imposed. See Andrews v. United States, 373 U.S. 334, 340, 83 S.Ct. 1236, 10 L.Ed.2d 383 (1963). The government, however, asks us to review its interlocutory appeal on three alternative grounds: (1) the text of the Criminal Appeals Act, codified at 18 U.S.C. § 3731, (2) the collateral order doctrine, or (3) by granting a writ of mandamus. I do not find the appeal reviewable under the first two, and I would not grant a writ of mandamus. Accordingly, I would dismiss the appeal. Because the majority addresses the merits of the government’s appeal, I will also explain why, assuming arguendo we had jurisdiction, I would affirm.
I
The government’s three asserted bases for jurisdiction do not provide this court jurisdiction to hear the government’s interlocutory appeal.
A
The majority accepts the government’s invitation to find jurisdiction in the text of the Criminal Appeals Act. This statute expressly contemplates interlocutory appeals from “a criminal case[.]” 18 U.S.C. § 3731. Here, instead, we are presented with an interlocutory appeal from a grant of habe-as corpus. The Supreme Court has made clear habeas corpus “is a separate proceeding, independent of the original criminal case.” Andrews, 373 U.S. at 338, 83 S.Ct. 1236. Therefore, the Supreme Court ruled the “Criminal Appeals Act has no applicability to such a proceeding.” Id.
Sister circuits have concluded Andrews forecloses any appeal stemming from a grant of habeas corpus until after the inmate has been resentenced. See Sampson v. United States, 724 F.3d 150, 158 (1st Cir.2013) (rejecting jurisdiction based on 18 U.S.C. § 3731 because “Andrews is binding on us.”); United States v. Stitt, 459 F.3d 483, 488 (4th Cir.2006) (Williams, J., concurring) (“[T]he purpose of a capital sentence hearing ... is to determine the proper punishment to be imposed on a criminal wrongdoer, not to determine whether a defendant should be convicted of the charged crime. Accordingly, under Andrews, a district court’s order granting a future capital resentencing hearing ... is not appealable.”); United States v. Hammer, 564 F.3d 628, 634 (3d Cir.2009) (citing approvingly the concurring opinion in Stitt, concluding a habeas corpus “pro *945 ceeding is not final until the prisoner is resentenced.”). I agree with the holdings of these circuits.
Those cases did not present evidentiary issues, as the majority believes this case does. The government argues it is appealing the exclusion of evidence. The evidence, however, was only excluded as it pertained to Johnson’s eligibility for the death penalty and, indeed, may be introduced in the new penalty selection phase. The government’s appeal, therefore, is more properly understood as an appeal of the habeas corpus relief because the government seeks to change the relief granted by the district court. For this reason, I cannot ignore the Supreme Court’s plain rule: the Criminal Appeals Act does not apply to a habeas corpus proceeding.
B
The government also seeks jurisdiction under the collateral order doctrine. For us to hear an interlocutory appeal “under the collateral order doctrine, the decision appealed from must satisfy three requirements: (1) it must conclusively determine the disputed question; (2) it must resolve an important issue completely separate from the merits of the action; and (3) the decision must be effectively unreviewable on appeal from a final judgment.” Howard v. Norris, 616 F.3d 799, 802 (8th Cir.2010) (citing Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100, 103, 130 S.Ct. 599, 175 L.Ed.2d 458 (2009)). The Supreme Court has warned courts to limit appellate review under the collateral order doctrine, lest the exception “swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered.” Mohawk Indus., Inc., 558 U.S. at 106, 130 S.Ct. 599 (2009) (citation and quotation omitted).
Because the evidence which the government seeks to introduce relates directly to Johnson’s eligibility for the death penalty, the government’s issue on appeal is not completely separate from the merits. As a result, the government cannot satisfy the second prong necessary to obtain review under the collateral order doctrine.
C
Finally, the government asks this court to issue a writ of mandamus, compelling a reversal of the district court’s order in the most extraordinary fashion our judicial system allows. The writ is “among the most potent weapons in the judicial arsenal.” Will v. United States, 389 U.S. 90, 107, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967). For a court to grant this extraordinary relief, the party seeking the writ (1) must “have no other adequate means to attain the [desired] relief,” and (2) “must satisfy the burden of showing [its] right to issuance of the writ is clear and indisputable.” Cheney v. U.S. Dist. Court for D.C., 542 U.S. 367, 380-81, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004) (internal citations and quotation marks omitted). Further, “even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances.” Id. at 381, 124 S.Ct. 2576.
Long-standing law indicates “the writ of mandamus may not be made to perform the office of an appeal.” United States v. Judges of U.S. Court of Appeals, 85 F. 177, 180 (8th Cir.1898); see also Bath Cnty. v. Amy, 80 U.S. 244, 249, 13 Wall. 244, 20 L.Ed. 539 (1871) (“[T]he writ cannot be used to confer a jurisdiction which the Circuit Court would not have without it.”). A writ of mandamus “should not be used as a substitute for interlocutory appeal. This is especially true in criminal cases.” Duffy v. Dier, 465 F.2d 416, 417-18 (8th Cir.1972) (internal citation omitted).
*946 Because I have separately concluded we do not have jurisdiction to hear this interlocutory appeal, and because the government sought alternative jurisdiction in the writ as a substitute for an interlocutory appeal, I would not grant a writ to create jurisdiction where there is none. I also believe the writ would be inappropriate in these circumstances, as I do not find the district court erred in its order.
II
The majority’s ruling also troubles me because, in effect, it vacates an errorless jury decision. To that end, I will explain why I do not find the district court erred and, assuming arguendo we had jurisdiction, would affirm.
In Johnson’s original criminal case, the district court bifurcated[3] the sentencing phase to “cure ... potential unfair prejudice, confusion, and misdirection” relating to the evidence presented to determine Johnson’s eligibility for the death penalty. United States v. Johnson, 362 F.Supp.2d 1043, 1110 (N.D.Iowa 2005) aff'd in part, 495 F.3d 951 (8th Cir.2007).[4] We have endorsed such a bifurcation as a discretionary trial management device. United States v. Bolden, 545 F.3d 609, 618 (8th Cir.2008) (citing approvingly United States v. Fell, 531 F.3d 197, 240 n. 28 (2d Cir.2008)). Bifurcating the sentencing phase is done to allay concerns over the relaxed evidentiary rules governing the jury’s determination of eligibility. See United States v. Jordan, 357 F.Supp.2d 889, 903-04 (E.D.Va.2005); see generally Michael D. Pepson & John N. Sharifi, Two Wrongs Don’t Make A Right: Federal Death Eligibility Determinations and Judicial Trifurcations, 43 Akron L.Rev. 1, 49 (2010).
In Bolden, we found the district court did not abuse its discretion in denying a motion to bifurcate the sentencing phase. 545 F.3d at 618. In support of this conclusion, we commended the district court for “carefully instructing] the jury” to not consider certain evidence for death-eligibility. Id. at 619. In other words, we have recognized the evidentiary concerns which prompt some courts, in their discretion, to bifurcate a capital sentencing hearing. By reversing a grant of habeas corpus today — one written to maintain the integrity of the original decision to bifurcate the sentencing hearing — I fear we have made our endorsement of sentencing bifurcation hollow.
The government argues the eligibility and selection phases are only properly understood as a single hearing, a sentencing phase. The statute under which Johnson was sentenced contemplates separate hearings to determine guilt and sentencing. 21 U.S.C. § 848(i)(l). Though the statute prefers the same jury hear the guilt and sentencing phases, see 21 U.S.C. § 848(i)(l)(A) (not listing any predicates for using the same jury), a jury empaneled for the sole purpose of sentencing is allowed if “the jury which determined the defendant’s guilt has been discharged for good cause.” 21 U.S.C. § 848(i)(l)(B)(3). There is no dispute the previous jury was discharged for good cause.
The government argues the statute’s text, however, demands a jury must be empaneled to hear both the eligibility and *947 selection phases of a sentencing hearing. I do not find such a demand in the statute; I do find, however, the possibility of bringing in a new jury, one bound by the findings of a previous jury. The statute does not prohibit bifurcation of the sentencing phase, nor does our case law. See Bolden, 545 F.3d at 618. Further, because the statute contemplates separate juries for the separate phases, I find the statute considers the separate phases — whether two or three — as distinct.
In its grant of habeas corpus, the district court found trial counsel was constitutionally ineffective only in the selection phase of Johnson’s capital trial. The district court then followed the Supreme Court’s mandate to “tailor[ ]” relief “to the injury suffered from the constitutional violation.” United States v. Morrison, 449 U.S. 361, 364, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981). To that end, the district court ordered a new proceeding to determine only whether Johnson should be put to death. This new proceeding would take as res judicata Johnson’s guilt and eligibility for the death penalty, as determined by the jury in phases of the proceedings below which were without error. For this new proceeding, the government seeks to introduce evidence to prove statutory aggravating factors. These factors would be determinative in the eligibility phase of the trial. Because the district court’s tailoring did not require eligibility to be retried, however, the district court ordered that evidence excluded, but only as it pertained to eligibility. The district court did not exclude the evidence from introduction at the selection phase. The majority believes this order effectively excluded evidence and vacates the order, but in so doing remands for a new eligibility and selection phase, even though Johnson’s constitutional rights were not injured before the jury in her eligibility phase.
In this eligibility phase, the government needed to prove at least one of the following statutory aggravating factors: (1) all five murders showed substantial planning and premeditation, (2) the adult victims suffered substantial abuse, and (3) the child victims were vulnerable. The jury found Johnson eligible for the death penalty (1) for substantial planning and premeditation with respect to only one murder, (2) because the adult victims suffered substantial abuse, and (3) because the children were vulnerable victims. With today’s opinion, the government gets a second bite at the apple — a chance to retry Johnson for death eligibility regarding the substantial planning and premeditation of the other four murders.
Ill
The district court in the criminal case permissibly bifurcated the sentencing hearing and, in so doing, created two distinct phases. After finding a constitutional injury occurred only in the latter of those two distinct phase, the district court permissibly tailored habeas corpus relief to only retry the phase in which error occurred.
In other words, a jury lawfully has found Johnson eligible for the death penalty. No errors tainted that jury’s decision. A jury then found Johnson deserved the death penalty, but that decision was tainted by the ineffective assistance of Johnson’s trial counsel. It is only that jury decision we must vacate. This is what the district court has done. Therefore, assuming we had jurisdiction, I would affirm the district court’s order granting habeas corpus relief.

. Because a federal capital case is already bifurcated into a guilt phase and a penalty phase, some courts have referred to this situation as trifurcation, where there is (1) a guilt phase, (2) a death-eligibility phase, and (3) a penalty-selection phase. This appeal does not concern Johnson's guilt; therefore, I use bifurcation to mean the bifurcation of the sentencing phase.

. On appeal, we noted the sentencing bifurcation, but did not discuss its appropriateness. Johnson, 495 F.3d at 960.