**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3337
_____

UNITED STATES OF AMERICA,

v.

ANTHONY JACKSON
                    Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2-03-cr-00642-001)
District Judge: Honorable Michael M. Baylson
_____

Submitted Under Third Circuit L.A.R. 34.1(a):
September 23, 2022
_____

Before: CHAGARES, *Chief Judge*, MCKEE, and PORTER,
*Circuit Judges*.

(Filed: October 19, 2022)

_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

**PORTER**, *Circuit Judge*.

Anthony Jackson was resentenced under the First Step Act. He was released from prison and sentenced to the minimum period of supervised release required by law. But Jackson did not like the District Court's statement of reasons, so he appealed. We hold that Jackson lacks Article III standing to appeal the District Court's favorable judgment, so we will dismiss his appeal.

I

We write for the parties, so our statement of the facts and applicable law will be brief. Jackson was convicted in 2004 for possession with intent to distribute more than five grams of crack cocaine within one thousand feet of a school. 21 U.S.C. §§ 841(a)(1), 860(a). At the time, that conviction carried up to eighty years in prison. The District Court sentenced Jackson to twenty-five years' imprisonment, within the range suggested by the Guidelines for a "career offender" in Jackson's circumstances (262 to 327 months).

In 2010, Congress enacted the Fair Sentencing Act, amending Jackson's statute of conviction "by increasing the quantity threshold from five to twenty-eight grams of crack." *United States v. Jackson*, 964 F.3d 197, 200 (3d Cir. 2020). Eight years later, Congress enacted the First Step Act, making that same Fair Sentencing Act amendment retroactive. *Id.*

In an earlier appeal, we held that Jackson was eligible for a sentencing reduction under the First Step Act. *Id.* at 206. On remand, Jackson asked the District Court for a time-served sentence. He gave several reasons to revisit the sentence. Under current law,

2

the maximum prison time for Jackson's crime of conviction would be forty years instead of eighty, suggesting a lower sentence could be warranted under the sentencing factors. *See* 21 U.S.C. §§ 841(b)(1)(C), 860(a)(1); 18 U.S.C. § 3553(a)(3). Jackson also argued that under our current caselaw interpreting the Sentencing Guidelines, he would not be classified as a career offender and so he should get a lower sentencing range calculation on resentencing. In Jackson's view, his sentencing range under the Sentencing Guidelines should be 110 to 137 months, and he had served 187 months.

The United States did not oppose a sentence reduction. It conceded that it was "unlikely" that Jackson would be considered a career offender under current caselaw. Still, the United States argued that the District Court lacked authority to revisit Jackson's designation as a career offender in a First Step Act resentencing.[1]

The District Court did not recalculate the Guidelines' sentencing range. Still, the District Court imposed a time-served sentence with the minimum of six years of supervised release, the most favorable sentence Jackson could have received by law. *See* 21 U.S.C. §§ 841(b)(1)(C), 860(a)(1). But a statement of reasons accompanying the judgment caught Jackson's eye: the statement of reasons still classified Jackson as having the same Guidelines' range and criminal-history category as during his initial sentence, consistent with Jackson's prior classification as a career offender under the Guidelines.

---

[1] *But see United States v. Murphy*, 998 F.3d 549, 556 (3d Cir. 2021) (holding that a district court in a First Step Act resentencing must "consider whether [the prisoner] qualified as a career offender at that time").

Jackson did not like that part of the statement of reasons, so he filed a notice of appeal.[2]

## II

Our analysis begins—and ends—with jurisdiction. Federal courts have the judicial power to decide actual "Cases" or "Controversies." U.S. Const. art. III, § 2.

> One essential aspect of this requirement is that any person invoking the power of a federal court must demonstrate standing to do so. This requires the litigant to prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision.

*Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013).

The Article III standing requirement "must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance." *Id.* at 705. "In considering a litigant's standing to appeal, the question is whether it has experienced an injury fairly traceable to the *judgment below.*" *West Virginia v. EPA*, 142 S. Ct. 2587, 2606 (2022) (quotation marks omitted); *cf. McClung v. Silliman*, 19 U.S. (6 Wheat.) 598, 603 (1821) ("The question before an appellate Court is, was the *judgment* correct, not the *ground* on which the judgment professes to proceed."). Federal courts review "judgments, not opinions." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984).

---

[2] He also moved to correct his sentence, arguing that the District Court got the applicable Guidelines' sentencing range wrong. But because Jackson had filed a notice of appeal, the District Court lacked jurisdiction to act on Jackson's motion.

4

Jackson does not quibble with the District Court's judgment—meaning its revised sentence. After all, he was released from prison for time served, and he was sentenced to the minimum term of supervised release allowed for his criminal offense. He agrees with the District Court's sentence, so he has no injury traceable to the judgment. Think about it this way: if we agreed with Jackson's argument that he is not a career offender under the Guidelines, nothing in his time-served sentence or his period of supervised release would need to change. There would be nothing for us to vacate or reverse. Jackson's real gripe is with the District Court's statement of reasons. But his theoretical disagreement over the correct Guidelines' range does not amount to a concrete injury traceable to the judgment.

Jackson argues that he could be injured if a *future* judgment relies on the statement of reasons to sentence him as a career offender. If he violates the terms of his supervised release *and* the District Court decides to resentence him, Jackson believes he would be stuck with the "career offender" criminal-history category under principles of preclusion, subjecting him to a greater sentence. Maybe so, but a hypothetical future injury from a hypothetical future judgment is speculative. "Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be certainly impending to constitute injury in fact." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (quotation marks omitted). "It is purely a matter of speculation whether" the District Court will ever revoke Jackson's supervised release and resentence him in the future. *Spencer v. Kemna*, 523 U.S. 1, 16 (1998). The Supreme Court has rejected analogous unadorned speculation based on the possibility of an offender "violating the law, getting caught, and being

5

convicted." *Id.* at 15. We do the same here. Jackson's "unadorned speculation will not suffice to invoke the federal judicial power." *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 44 (1976).

*     *     *

We have the power to correct judgments, not the power to write advisory opinions. So we will dismiss Jackson's appeal.